IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

RAYMOND L. SANDERS and SHAWNDA
SANDERS,

                         Plaintiffs,

    v.

UDR, Inc., d/b/a DOMINION CREEKWOOD,

                        Defendant.

Civil Action No. 3:10-CV-459

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Dismiss filed by Defendant UDR, Inc., d/b/a Dominion Creekwood (Dock. No. 6). Upon due consideration and for the reasons that follow, the Court will GRANT the Motion in part and DENY the Motion in part.

## **I. BACKGROUND**[1]

This controversy arises out of Plaintiffs Raymond and Shawnda Sanders's occupancy of a two-bedroom apartment in the Dominion Creekwood complex owned and managed by UDR. The Sanderses signed a lease dated August 22, 2008, and began moving into the apartment on or about that date. Between September 2008 and June 2009, the Sanderses informed management of several problems with the apartment, including water stains, leaking water, and the apparent presence of mold. Although the apartment

---

[1] For the purposes of the Motion to Dismiss, the Court presents the relevant facts as alleged by the Plaintiffs.

complex's maintenance staff made multiple visits to the apartment, they did not solve the problems to the Sanderses' satisfaction.

Shawnda Sanders contacted Jan Frank, the district manager for UDR, on June 5, 2009, to report her dissatisfaction with the maintenance staff's responses to her problems. Around this time, Shawnda Sanders also obtained a mold test kit, which she prepared on or about June 19 and mailed for analysis shortly thereafter. As a result of the continuing maintenance problems, which now included clogged plumbing, the Sanderses submitted a written request to terminate their lease on June 22, 2009. Management accepted the request and gave the Sanderses until July 22, 2009, to vacate the apartment.

On July 10, 2009, Shawnda Sanders received the lab results for the mold test kit she prepared in June. The lab results indicated "unusual mold conditions." (Compl. ¶ 46). The Plaintiffs and their child moved out of the apartment that day. A professional mold investigator hired by the Sanderses inspected the apartment on July 16, 2009, and found water damage and mold growth.

The Sanderses had several health problems while living in the apartment. Shawnda Sanders experienced severe headaches, dizziness, skin problems, a respiratory infection, sinus infections, and the exacerbation of existing allergies. She will remain on vaccine therapy for three to five years to treat her mold allergy. Raymond Sanders experienced serious breathing problems, "onset asthma," allergies, a bacterial infection, skin rashes, and memory loss (Compl. ¶¶ 30, 51; Case No. 3:10-CV-623, Compl. ¶ 64). Upon advice from Shawnda Sanders's physician and because their belongings remained "musty . . . even after

cleaning," the Sanderses got rid of most of their personal belongings and those of their infant child in August 2009. (Compl. ¶ 50).

In May 2010, the Sanderses filed a Complaint in this case in Henrico County Circuit Court. In July 2010, UDR answered the negligence claim (Count III), demurred as to the remaining counts, and removed the case to this Court. This Court asserted diversity jurisdiction as the basis for subject matter jurisdiction because the Sanderses are Virginia residents, UDR is a Maryland corporation with its principal place of business in Colorado, and the amount in controversy exceeds $75,000. This Court consolidated this case with a separate action filed by Raymond Sanders.

The Sanderses' Complaint asserts six counts against UDR: breach of contract (Count I); violation of the Virginia Residential Landlord and Tenant Act (VRLTA) (Count II); negligence (Count III); negligence per se under the VRLTA (Count IV); negligence per se under the Virginia Uniform Statewide Building Code (Building Code) (Count V); and fraud (Count VI). The Sanderses jointly request damages for property loss and expenses in the amount of $15,000. Ms. Sanders also seeks compensatory and other damages for personal injury in the amount of $175,000, and Mr. Sanders seeks an award of compensatory and other damages in the amount of $2,500,000.

UDR filed a motion requesting that the Court dismiss five of the six counts alleged in the Sanderses' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint stating a claim for relief contain a short plain statement of the claim that gives the defendant fair

notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Defendants police this requirement using Rule 12(b)(6), which permits a party to test the legal sufficiency of a complaint. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A 12(b)(6) motion does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. As a result, in resolving a 12(b)(6) motion, a court must regard as true all of a plaintiff's well-pled allegations, Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proven consistent with those allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In contrast, a court does not have to accept legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). With these principles in mind, a court must ultimately ascertain whether a plaintiff has stated a "plausible, not merely speculative, claim for relief." Twombly, 550 U.S. at 555.

When adjudicating a motion to dismiss, a court is usually limited to the pleadings and matters of judicial notice. A district court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While "Rule 8(a)(2) . . . requires a showing,

4

rather than a blanket assertion of entitlement to relief," Twombly, 550 U.S. at 556 n.3, a plaintiff is not required to show that he is likely to obtain relief, Iqbal, 129 S. Ct. at 1949. In the end, if the complaint alleges–directly or indirectly–each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. Twombly, 550 U.S. at 563 n.8.

## III. DISCUSSION

In their Complaint, the Sanderses assert six claims against UDR, which moves to dismiss five. The following sections address each of the challenged claims.

### A. Breach of Contract (Count I)

In Count I of their Complaint, the Sanderses assert that UDR breached the lease agreement, both on its own terms and through violations of the VRLTA and a state mold remediation statute. Under Virginia law, a party claiming breach of contract must establish three elements to prevail: (1) a legally enforceable obligation under a contract, (2) a breach of that obligation, and (3) injury or damage to the plaintiff flowing from that breach. E.g., Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp., 407 F. Supp. 2d 758, 761 (E.D. Va. 2005); Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009). To survive the motion to dismiss their breach of contract claim, the Sanderses in their Complaint must allege facts supporting each element of the cause of action, either directly or indirectly. Twombly, 550 U.S. at 563 n.8.

#### 1. Legally Enforceable Obligation Under the VRLTA

Defendant UDR asserts that the Sanderses have failed to show that UDR had a legally enforceable obligation giving rise to a breach of contract claim and argues that no law allows the Sanderses to base a breach of contract claim on a statutory violation of the Virginia Residential Landlord and Tenant Act, Va. Code Ann. §§ 55-248.2–248.40.

The VRLTA was enacted in 1974 to "provide[] a comprehensive scheme of landlords' and tenants' contractual rights and remedies." Isbell v. Commercial Inv. Assocs., Inc., 644 S.E.2d 72, 77-78 (Va. 2007). Section 55-248.13 of the VRLTA sets forth the duties of a landlord to maintain fit premises and, in relevant parts, requires a landlord to

1. Comply with the requirements of applicable building and housing codes materially affecting health and safety;

2. Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

3. . . .

4. Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and applicable . . . supplied or required to be supplied by him; [and]

5. Maintain the premises in such a condition as to prevent the accumulation of moisture and the growth of mold . . .

Id. § 55-248.13(A)(1)-(5). The remedies available to a tenant for a landlord's noncompliance "materially affecting health and safety" include termination of the rental agreement, damages, and injunctive relief upon both written notice of the breach and an opportunity to remedy it. Id. § 55-248.21. The Act leaves "damages" undefined. See id. § 55-248.4.

The Supreme Court of Virginia has held that "[a] pertinent statute is as much a part of the contract as if it were incorporated in it." Maxey v. Am. Cas. Co., 23 S.E.2d 221, 223 (Va. 1942); accord Marriott v. Harris, 368 S.E.2d 225, 233 (Va. 1988). Furthermore, Section 55-248.3:1 of the VRLTA expressly provides that the Act "shall apply to all rental agreements entered into on or after July 1, 1974, . . . and may not be waived or otherwise modified." Based on this provision and the legal principle that parties contract with reference to statutes in existence, a lease agreement subject to the VRLTA includes all the landlord's duties established under the Act. See N.H. Ins. Co. v. Hewins, 627 P.2d 1159, 1161 (Kan. App. 1981) ("Parties to a residential lease are presumed to contract with reference to presently existing statutes, and the provisions of the statute will be read into and become part of the contract by implication except when a contrary intention has been manifested and is permitted by the Act.").

A landlord entering into a lease agreement subject to the VRLTA assumes the legal duties required in the Act as if they were incorporated into the lease agreement, and a violation of the statute gives rise to a breach of contract action. Therefore, the Complaint is sufficiently well-pled as to the first element of a breach of contract claim.

**2. Recoverable Damages**

In its Motion to Dismiss, UDR also challenges whether the Sanderses' Complaint meets the Rule 12(b)(6) pleading standard as to the final element of a breach of contract claim: recoverable damages flowing from the alleged breach. Specifically, UDR argues that the Sanderses improperly attempt to recover in tort under a theory of contract liability.

Virginia courts have consistently held that a plaintiff may not recover for personal injury in a contract action. "The law of torts is well equipped to offer redress for losses suffered by reason of a 'breach of some duty imposed by law to protect the broad interests of social policy," but it is "not designed, however, to compensate parties for losses suffered as a result of breach of duties assumed only by agreement." E.g., Sensenbrenner v. Rust, Orling & Neal Architects, Inc., 374 S.E.2d 55, 58 (Va. 1988). Generally, courts consider losses that are purely economic in nature recoverable in contract and damages associated with injury to persons or property recoverable in tort. Id. at 57.

In their breach of contract claim, the Sanderses allege broadly that UDR "is liable for all damages that naturally flow from or were caused by the breach." (Compl. ¶ 72). The Sanderses' request, which is not specific to the breach of contract claim, includes relief for "property damage and loss, relocation expenses, cleaning expenses, and testing fees." (Compl. ¶ 107). They also request "compensatory and other damages for personal injury, medical expenses, pain and suffering and emotional distress." Id.

Applying the Supreme Court of Virginia's approach that only economic damages are recoverable in contract actions while damages associated with injury to persons and property are recoverable in tort, many of the Sanderses' requested damages are not recoverable in the breach of contract cause of action. The Plaintiffs do, however, allege some purely economic damages that are recoverable. At the hearing on this Motion to Dismiss, the Plaintiffs' counsel acknowledged that only economic damages are recoverable in a breach of contract claim and denied any requests for personal injury in the contract action. With that acknowledgment and limitation, the Sanderses' request for damages in

the breach of contract claim is sufficiently well-pled to survive the Motion to Dismiss. The Defendant's Motion is DENIED as to Count I.

**B. VRLTA Violation (Count II)**

In Count II of the Complaint, the Sanderses seek actual damages for personal injury and property loss resulting from UDR's alleged statutory violations of the VRLTA. UDR argues that the VRLTA does not establish a statutory cause of action in tort allowing plaintiff to recover for personal injuries or property damage.

Virginia common law has traditionally held that a landlord owes a tenant no duty to maintain premises that are under the tenant's exclusive control. Isbell, 644 S.E.2d at 74 (citing Paytan v. Rowland, 155 S.E.2d 36, 37 (Va. 1967)). Damages for personal injuries resulting from a landlord's failure to maintain such premises, therefore, have not traditionally been available. Id. In April 2007, the Virginia Supreme Court held that the VRLTA did not abrogate the common law by creating a statutory cause of action in tort allowing plaintiffs to recover for personal injuries. Isbell, 644 S.E.2d at 76. The court noted, "'[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested.'" Id. at 75 (alteration in original) (quoting Herndon v. St. Mary's Hospital, Inc., 587 S.E.2d 567, 569 (Va. 2003)). The court also noted that if a landlord fails to materially comply with the health and safety provisions of the Act, Sections 55-248.21 and 55-248.40 provide limited relief, allowing a tenant to terminate the lease agreement, seek equitable relief, and obtain damages incidental to that equitable relief. Id. at 77-78. Based on established Virginia common law and the lack of "plainly manifested"

9

legislative intent to abrogate that common law, the Isbell court determined that the VRLTA did not create a statutory cause of action in tort.

Three months after the Isbell decision, an amendment to the VRLTA became effective and established that tenants may recover for "actual damages proximately caused by the landlord's failure to exercise ordinary care" in fulfilling statutory obligations. Va. Code. Ann. § 55-248.13(B). The relevant amendment was introduced in January 2007 and signed into law in March 2007, a month prior to Isbell. H.R. 2188, 2006 Leg., Reg. Sess. (Va. 2006). That amendment does not expressly create a statutory cause of action for personal injury under the VRLTA in abrogation of the common law. Neither does it show a "plainly manifested" legislative intent to do so, as evidenced by the parties' current debate over that intent.

Given the Isbell court's reluctance to hold, absent "plainly manifested" intent, that the legislature enacting the VRLTA intended to abrogate common law to create a statutory right of action for personal injury, Isbell, 644 S.E.2d at 75, it is unlikely that the Virginia Supreme Court would find that the legislature intended to create that cause of action with the 2007 amendment, which lacks the "plainly manifested" intent to abrogate the common law. Since the VRLTA does not create a statutory cause of action in tort, the Defendant's Motion is GRANTED as to Count II.

## C. Negligence Per Se Under the VRLTA (Count IV)

In Count IV of their Complaint, the Sanderses rely on a theory of negligence per se to claim that UDR is liable for property damage, personal injury, compensatory damages, and expenses flowing from its alleged failure to fulfill its duties as a landlord under the VRLTA.

(Compl. ¶ 96). Under Virginia law, a party may rely on the doctrine of negligence <u>per se</u> to bypass some elements of a common law negligence claim. Under this theory, violation of an accepted or established standard of care may excuse a party from proving that the opposing party owed him a duty and breached that duty. <u>See</u> <u>Cooper v. Ingersoll Rand Co.</u>, 628 F. Supp. 1488, 1493 (W.D. Va. 1986). The Virginia Supreme Court has not decided a negligence <u>per se</u> case based on the VRLTA, and that claim was not before it in <u>Isbell</u>. <u>See</u> <u>Isbell</u>, 644 S.E.2d at 74 n.2. Assuming, <u>arguendo</u>, that an underlying common law duty exists between a landlord and a tenant that may give rise to a negligence claim under the VRLTA, the Sanderses' reliance on the doctrine of negligence <u>per se</u> is misplaced because their Complaint does not satisfy its elements.

To successfully apply the doctrine of negligence <u>per se</u>, a party must show that (1) the opposing party violated a statute enacted for public safety, (2) the party seeking to rely on negligence <u>per se</u> was a member of the class of persons intended to be protected by that statute, (3) the harm the proponent experienced was of the type the statute was designed to protected against, and (4) the statutory violation was the proximate cause of the proponent's injury. <u>Schlimmer v. Poverty Hunt Club</u>, 597 S.E.2d 43, 46 (Va. 2004).

The VRLTA does not meet the first requirement of being a statute enacted for public safety. The stated purposes of the VRLTA are

> to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants; to encourage landlords and tenants to maintain and improve the quality of housing; and to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth . . . .

11

Va. Code Ann. § 55-248.3 (2010). Furthermore, as the Virginia Supreme Court observed in Isbell, "a close examination of the Act as a whole reveals an integrated statutory scheme governing contractual relationships between landlords and tenants." 644 S.E.2d at 76.

Thus, despite the Sanderses' conclusory allegation that the VRLTA was "enacted to provide for safe and habitable housing" (Compl. ¶ 93), and while the Act may have consequences for public safety, its purpose is to improve contractual relationships between tenants and landlords. Since alleged violations of the VRLTA would not satisfy the first element of a negligence per se claim, the Defendant's Motion to Dismiss is GRANTED as to Count IV.

**D. Negligence Per Se Under the Building Code (Count V)**

In Count V of their Complaint, the Sanderses allege that UDR is liable for its breach of various sections of the Virginia Uniform Statewide Building Code, Part III, Maintenance (Virginia Maintenance Code). They allege that UDR "breached the duties prescribed by the Virginia Maintenance Code, including sections [] 301.2, 304.7, 304.9, 304.13, 304.13.1, 305.1, 305.3, 403.5, 504.1, 504.3, 506.2, [and] 507.1." (Compl. ¶ 101).

While no Virginia Supreme Court case speaks to the exact circumstances of the instant case, that court has recognized the possibility of negligence per se claims based on violations of the Building Code. See, e.g., O'Neill v. Windshire-Copeland Assocs., 595 S.E.2d 281, 284 (Va. 2004); MacCoy v. Colony House Builders, Inc., 387 S.E.2d 760, 763 (Va. 1990) ("We agree . . . that the violation of the Building Code, like the violation of any statute enacted to protect health, safety, and welfare, is negligence per se.). Unlike with the VRLTA,

violations of the Maintenance Code may, in some circumstances, give rise to a viable negligence per se claim.

To survive the Motion to Dismiss, the Sanderses must plead the elements of a proper negligence per se claim. Their Complaint, however, does not set forth with sufficient detail the facts relevant to the twelve alleged Maintenance Code violations. Rather than present specific facts alleged to be present in this case and plead how those facts lead to Maintenance Code violations, the Sanderses simply present a string of legal conclusions and code provisions without any relevant details. Thus, while the Sanderses may have an actionable claim for negligence per se under the Maintenance Code, the Complaint in its current form is insufficient to put UDR on notice of the specific allegations against it. Therefore, UDR's Motion to Dismiss the negligence per se claim based on the Maintenance Code is GRANTED without prejudice.

### E. Fraud (Count VI)

The sixth count of the Complaint sets forth a fraud claim against UDR in response to its alleged "malicious pattern and practice of misrepresentation and concealment of water intrusion." (Compl. ¶ 106). Rule 9(b) of the Federal Rules of Civil Procedure requires that complainants plead "the circumstances constituting fraud or mistake . . . with particularity." Under Virginia law, a claim for actual fraud must allege: "(1) a false misrepresentation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Brunckhorst Co., LLC v. Coastal Atl., Inc., 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (quoting Winn v. Aleda Constr. Co., 315 S.E.2d 193, 195 (1984)). The Fourth Circuit has held that "a complaint

which fails to specifically allege the time, place, and nature of the fraud is subject to dismissal." Lasercomb v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990).

The Sanderses allege that UDR "falsely, intentionally, and with conscious disregard for the health and safety of Plaintiffs materially misrepresented that 'mildew' but not mold was present" in the apartment. (Compl. ¶ 104). They further allege that the "statement was made with the intent to mislead the Plaintiffs, and was made deliberately or negligently." Id. These claims, as presented in the Complaint, do not meet the Rule 9(b) pleading requirements for fraud because they are broad and lack the necessary particularity. Specifically, they do not identify the time and place of the alleged fraud. Furthermore, they present the remaining elements of the claim with conclusory statements rather than factual allegations or detail.

In response to the Motion to Dismiss, the Sanderses assert that the Complaint meets the pleading standards for constructive fraud. They did not, however, plead constructive fraud in their Complaint, and the Court may not consider new claims asserted in response to the Motion to Dismiss.

Due to the Plaintiffs' failure to satisfy the Rule 9(b) pleading standard, the Motion to Dismiss the fraud count is GRANTED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion to Dismiss as to the breach of contract claim (Count I), GRANTS the Motion as to the VRLTA violation claim and the VRLTA negligence per se claim (Counts II and IV), and GRANTS without prejudice the Motion as to the Building Code negligence per se claim and fraud claim (Counts V and VI).

Let the Clerk send a copy of this Memorandum to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

<div style="border:1px solid black; padding:8px; display:inline-block;">
_____/s/_____
James R. Spencer
Chief United States District Judge
</div>

ENTERED this __4th_ day of October 2010