UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| RAYMOND L. SANDERS and SHAWNDA SANDERS<br><br>Plaintiffs,<br><br>v.<br><br>UDR, INC., d/b/a DOMINION CREEKWOOD,<br><br>Defendant. | Civil Action No. 3:10-CV-459 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Defendant's Motion to Dismiss the Amended Complaints in the above-captioned matter. (Doc. No. 33). Upon due consideration and for the reasons stated below, the Court will DENY the Motion to Dismiss.

## I. BACKGROUND

### A. Factual Background[1]

This controversy arises out of Plaintiffs Raymond and Shawnda Sanders's occupancy of a two-bedroom apartment in the Dominion Creekwood complex owned and managed by UDR, Inc. The Sanderses signed a lease dated August 22, 2008, and began moving into the apartment on or about that date. Between September 2008 and June 2009, the Sanderses informed management of several problems with the apartment, including water stains, leaking water, and the apparent presence of mold.

---

[1] These facts are presented as alleged by the Plaintiff in the Amended Complaints (Doc. Nos. 21, 31).

1

Shawnda Sanders contacted Jan Frank, the district manager for UDR, on June 5, 2009, to report her dissatisfaction with the maintenance staff's responses to her problems. Around this time, Shawnda Sanders also obtained a mold test kit, which she prepared on or about June 19 and mailed for analysis shortly thereafter. As a result of the continuing maintenance problems, which now included clogged plumbing, the Sanderses submitted a written request to terminate their lease on June 22, 2009. Management accepted the request and gave the Sanderses until July 22, 2009, to vacate the apartment.

On July 10, 2009, Shawnda Sanders received the lab results for the mold test kit she prepared in June. The lab results indicated "'unusual mold conditions' including one or more molds 'associated with excess moisture.'" (Am. Compl. ¶ 46).[2] The Plaintiffs and their child moved out of the apartment that day. A professional mold investigator hired by the Sanderses inspected the apartment on July 16, 2009, and found water damage and mold growth.

## B. Procedural Background

In October and November 2010, the Sanderses filed Amended Complaints in this case alleging breach of contract (Count I), negligence (Count III), and negligence *per se* under the Virginia Uniform Statewide Building Code (Count V).[3] (Doc. Nos. 21, 31). The Amended Complaint in the lead case also alleged actual fraud (Count VI) and constructive fraud (Count VII) (Doc. No. 21). The Sanderses jointly request damages for property loss

---

[2] All citations to the Amended Complaint are to the lead case, which is the action filed jointly by the Sanderses and separately by Shawnda Sanders (Doc. No. 21).

[3] An earlier Order of this Court dismissed with prejudice two claims included in the original complaints: violation of the Virginia Residential Landlord and Tenant Act (VRLTA) (Count II) and negligence *per se* under the VRLTA (Count IV). The Plaintiffs have included those claims in the Amended Complaints for purposes of appeal.

2

and expenses in the amount of $15,000. Shawnda Sanders seeks compensatory and other damages for personal injury in the amount of $175,000, and Raymond Sanders seeks an award of compensatory and other damages in the amount of $2,500,000. The Sanderses both seek attorney's fees and costs.

UDR filed the instant motion requesting that the Court dismiss the negligence *per se* count and both of the fraud counts alleged in the Sanderses' Amended Complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 33).

## II. LEGAL STANDARD

Rule 12 allows a defendant to raise a number of defenses to a claim for relief at the pleading stage. Among these is the defense that the pleadings fail to state a claim upon which the Court can grant relief. Fed. R. Civ. P. 12(b)(6). Where a motion pursuant to Rule 12(b)(6) contends that a plaintiff's pleadings are insufficient to show entitlement to relief, a court must resolve the motion by reference to the allegations in the complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The question then before the court is whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief" in both "law and fact." *Id.* at 192-93.

The pleadings need not be supported by evidence but must "state a claim to relief *that is plausible on its face.*" *Id.* at 193 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). A plausible claim is one that contains more than just "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]." *Iqbal*, 129 S.Ct. at 1949. If the complaint alleges—directly or indirectly—each of the elements of a viable legal theory, the plaintiff should be given the opportunity to prove that claim.

In resolving a 12(b)(6) motion, a court must regard as true all of a plaintiff's well-pleaded allegations, *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proven consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In contrast, the court does not have to accept legal conclusions couched as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). *See also Iqbal*, 129 S. Ct. at 1950. With these principles in mind, a court must ultimately ascertain whether the plaintiff has stated a plausible, not merely speculative, claim for relief.

### III. DISCUSSION

In their Amended Complaints, the Sanderses assert five claims against UDR, which moves to dismiss three.

### A. Negligence *Per Se* Under the Building Code (Count V)

In Count V of their Amended Complaints, the Sanderses rely on a theory of negligence *per se* to allege that UDR is liable to them for its breach of various sections of the Virginia Uniform Statewide Building Code (Building Code)—specifically, Part III, Maintenance (Maintenance Code).[4] Under negligence *per se*, a plaintiff does not need to prove the elements of a common-law negligence claim if a defendant has violated a statute

---

[4] The Plaintiffs cite to the 2003 version of the Maintenance Code in their Amended Complaints, while the 2006 version governs this matter. The Court notes, however, that the relevant provisions were identical in 2003 and 2006 and that the Defendant alleges no specific harm caused by the error. At the hearing on this matter, the Defendant chose not to pursue their challenge to the citation. Accordingly, the Court notes the error and that Count V of the Amended Complaints is based on alleged violations of the 2006 Maintenance Code.

enacted for public safety. *Schlimmer v. Poverty Hunt Club*, 597 S.E.2d 43, 46 (Va. 2004). Instead, the "[v]iolation of a statute or a municipal ordinance adopted for the safety of the public is negligence in that it is the failure to exercise that standard of care prescribed by a legislative body." *Moore v. Virginia Transit Co.*, 50 S.E.2d 268, 271 (Va. 1948).

To successfully apply the doctrine of negligence *per se*, a party must show that (1) the opposing party violated a statute enacted for public safety, (2) the party seeking to rely on negligence *per se* was a member of the class of persons intended to be protected by that statute, (3) the harm the proponent experienced was of the type the statute was designed to protected against, and (4) the statutory violation was the proximate cause of the proponent's injury. *Schlimmer*, 597 S.E.2d at 46. Whether there was a violation of the statute and whether the violation was the proximate cause of the injury are issues for the trier of fact. *McGuire v. Hodges*, 639 S.E.2d 284, 288 (Va. 2007) (citing *Schlimmer*, 597 S.E.2d at 46; *Kimberlin v. PM Transp., Inc.*, 563 S.E.2d 665, 668 (Va. 2002); *Thomas v. Settle*, 439 S.E.2d 360, 363 (Va. 1994)).

The Court's research uncovered no case decided by the Virginia Supreme Court that directly addresses the issues raised by the Sanderses' claim of negligence *per se* based on a violation of the Maintenance Code. The cases that do apply negligence *per se* to violations of the Building Code generally or to the Maintenance Code specifically either are not between residential landlords and tenants, *see, e.g., McGuire*, 639 S.E.2d at 288-89 (holding that a homeowner could be held negligent *per se* for a violation of the Building Code that resulted in a child's death) or precede the General Assembly's 2008 amendments to Virginia landlord-tenant law that established an ordinary care standard for statutory violations, *see e.g., O'Neill v. Windshire-Copeland Assocs.*, 595 S.E.2d 281, 284 (Va. 2004) (holding that

5

contributory negligence was available as a defense when a trial court determined that a building owner was negligent *per se* for violating a municipal building code). Therefore, no precedent directly answers the post-amendments question of whether a residential tenant may properly claim negligence *per se* based on a landlord's alleged failure to adhere to provisions of Maintenance Code.

### 1. Standard of Care

In *MacCoy v. Colony House Builders, Inc.* the Virginia Supreme Court stated that "the violation of the Building Code, like the violation of any statute enacted to protect health, safety, and welfare, is negligence *per se*." 387 S.E.2d 760, 763 (Va. 1990).[5] This comports with longstanding common law in Virginia, which "has adopted the requirements of a legislative enactment as the standard of conduct of a reasonable man." *Butler v. Frieden*, 158 S.E.2d 121, 122 (Va. 1967). Nonetheless, a statute does not automatically give rise to a claim of negligence *per se*. The Virginia Supreme Court has held that "a statute *may* define the standard of care to be exercised where there is an underlying common-law duty." *Williamson*, 350 S.E.2d 621, 624 (Va. 1986) (emphasis added).

The Virginia Supreme Court has acknowledged that some statutes may not set forth the standard of care to give rise to a negligence *per se* claim. For example, in *Evans v. Evans*, the Virginia Supreme Court held that a claim of negligence *per se* based on a violation of a

---

[5] In *Moskowitz v. Renaissance at Windsong Creek, Inc.*, a Virginia circuit court treated this statement as dicta. 52 Va. Cir. 459, n.1 (Va. Cir. Ct. 2000). Since the *MacCoy* and *Moskowitz* decisions, the Virginia Supreme Court has considered personal injury cases involving negligence *per se* claims based on municipal building codes without distinguishing or overruling the *MacCoy* court's statement permitting such actions. *See, e.g., McGuire*, 639 S.E.2d at 288-89 (Va. 2007) (citing *MacCoy* and holding that a homeowner could be held negligent *per se* for a municipal building code violation that resulted in a child's death); *O'Neill*, 595 S.E.2d at 284 (Va. 2004) (holding that contributory negligence was available as a defense when a trial court determined that a building owner's was negligent *per se* for violating a municipal building code).

6

state statute requiring child restraint devices in automobiles was impermissible. 695 S.E.2d 173, 177 (Va. 2010). The statute there included the following provision: "Violations of this article shall not constitute negligence *per se*." Va. Code Ann. § 46.2-1098. Neither the Building Code generally nor the Maintenance Code specifically contain any such provision.[6]

UDR relies heavily on the provisions of general Virginia landlord-tenant statutes, the Virginia Residential Landlord and Tenant Act (VRLTA), and a 2008 mold remediation statute to argue that the Building Code and Maintenance Code do not establish the standard of care and, therefore, that the Court should dismiss the Sanderses' negligence *per se* claim. Under general Virginia landlord-tenant law and the VRLTA, a landlord is "liable only for the tenant's actual damages proximately caused by the landlord's failure to exercise ordinary care." Va. Code Ann. § 55-225.3(B); *accord id.* § 55-248.13(B). Similarly, under a general provision of the Virginia Code, a landlord must exercise ordinary care to remediate visible mold. *Id.* § 8.01-226.12(E). Thus, all of these statutes establish ordinary care as the applicable standard of care for violations of their requirements. Nonetheless, to the extent any of these statutes apply to the residential arrangement between the parties, they do not expressly prohibit causes of action that exist at common law, including negligence and negligence *per se*. The Sanderses' negligence *per se* claim is based on common-law negligence and the common-law duties a landlord owes to a tenant, not on any statutory or

---

[6] At the hearing on this matter, the Defendant offered Section 103.3 of the Virginia Maintenance Code as evidence that the Court cannot divorce the standard of care for Maintenance Code violations from landlord-tenant law. The relevant portion of the Maintenance Code provides that "[t]he provisions of this section shall not, in any way, alter the rights and obligations of landlords and tenants pursuant to the applicable provisions of [general landlord-tenant statutes] or [the VRLTA]." Va. Maint. Code § 103.3. That provision, however, appears in a subsection of the Maintenance Code related to rental inspection programs mandated by Section 36-105.1:1 of the Code of Virginia. As this matter does not involve those inspection programs, which are conducted by localities rather than tenants or landlords, this provision of the Maintenance Code does not advance the Defendant's arguments.

contractual duties imposed on or assumed by UDR. Thus, UDR's arguments related to the standard of care included in the statutes are not persuasive.

### 2. Underlying Common-Law Duty

Negligence *per se* exists within the common law, and it does not create a common-law duty where there is none. *Williamson v. Old Brogue, Inc.*, 350 S.E.2d at 624 ("[T]he doctrine of negligence *per se* does not create a cause of action where none otherwise exists.") (citing *Butler v. Frieden*, 158 S.E.2d at 123). Thus, any allegations of negligence *per se* must be grounded in an underlying common-law duty.

Several common-law duties are relevant to the Sanderses' claims. In Virginia, a landlord is obligated to inform a tenant about any "defect[s] in the premises, known to [the landlord] and unknown to the tenant." *Caudill v. Gibson Fuel Co.*, 38 S.E.2d 465, 469 (Va. 1946); *also Isbell*, 644 S.E.2d 72, 74 (Va. 2007). A landlord also has "a duty to use ordinary care to maintain in a reasonably safe condition any part of the leased premises that was reserved for the common use of all tenants." *Kesler v. Allen*, 353 S.E.2d 777, 779 (Va. 1987). It is longstanding Virginia common law, however, that "'a landlord has no duty to maintain in a safe condition any part of the leased premises that [is] under [a tenant's] exclusive control.'" *Isbell*, 644 S.E.2d at 74 (quoting *Paytan v. Rowland*, 155 S.E.2d 36, 37 (Va. 1967)) (alterations in original). Furthermore, a landlord has no duty at common law to repair a tenant's premises. *See Wohlford v. Quesenberry*, 523 S.E.2d 821, 822 (Va. 2000). Where a landlord has entered a tenant's premises to make repairs, however, he must do so with reasonable care. *Holland v. Shively*, 415 S.E.2d 222, 224 (Va. 1992).

In their Amended Complaints, the Plaintiffs acknowledge the limits of the obligations imposed on UDR at common law by noting that UDR has the following duties: "a

8

duty to inform Plaintiff of known and concealed defects rendering the occupation of the premises dangerous, a duty to perform with reasonable care any repairs undertaken, and a duty to maintain in safe and habitable condition the premises outside of Plaintiffs' exclusive possession and control." (Am. Compl. ¶ 113). The allegations the Sanderses have made in Count V fall within those duties that exist at common law.

UDR argues that allowing the Sanderses to proceed with their negligence *per se* claim would be the equivalent of holding UDR strictly liable—that is, if the negligence *per se* claim proceeds, it would essentially require landlords "to meet an essentially unattainable standard, making them virtual guarantors of the perpetual pristine condition of leased premises under their control." (Mem. Supp. Mot. Dismiss 7). The longstanding common law is that Virginia does not require landlords to act as insurers of their tenants' safety. *Wagman v. Boccheciampe*, 143 S.E.2d 907, 909 (Va. 1965). Holding UDR strictly liable for a violation of the Maintenance Code without permitting it to offer an excuse would be at odds with that common law.

If the Court were to allow the Sanderses' negligence *per se* claim to go forward, the parties would still be free to argue the elements of negligence *per se*. *See McGuire*, 639 S.E.2d at 288. In particular, they can debate whether UDR violated the Maintenance Code and whether the violation, if any, was excusable. *See* Restatement (Second) of Torts § 288A(2) (2010) ("Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when . . . [the defendant] is unable after reasonable diligence or care to comply.").

### 3. Conclusion

The Virginia Supreme Court has held that legislative actions do not change the common law without a "plainly manifested" intent to do so. *Isbell*, 644 S.E.2d at 750. UDR offers no evidence that the General Assembly has abrogated Virginia common law by limiting the applicability of the doctrine of negligence *per se* where an underlying common-law duty exists. Accordingly, this Court denies the Defendant's Motion to Dismiss Count V.

### B. Actual and Constructive Fraud (Counts VI & VII)[7]

The sixth and seventh counts of the Amended Complaint set forth actual fraud and constructive fraud claims against UDR. Rule 9(b) of the Federal Rules of Civil Procedure requires that complainants plead "the circumstances constituting fraud or mistake ... with particularity." Under Virginia law, a claim for actual fraud must allege: "(1) a false misrepresentation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984); also *Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008). The Fourth Circuit has held that "a complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal." *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990).

In Virginia, "the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance

---

[7] Only the Amended Complaint in the lead case includes the actual and constructive fraud counts.

upon the misrepresentation." *Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (citing *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). Constructive fraud also requires a finding that the party making the representation intended the other party to act on it. *Id.*; *Henderson v. Henderson*, 495 S.E.2d 496, 499 (1998). In order to survive a motion to dismiss, the Plaintiffs must plead, "with the requisite degree of particularity, facts which support all the elements of a cause of action for constructive fraud." *Mortarino*, 467 S.E.2d at 782.

The Sanderses have pled at least four specific incidents of actual and constructive fraud: (1) an alleged misrepresentation of remedy made by maintenance staff responding to a complaint of water intrusion during the first week of September 2008, (2) an alleged misrepresentation made by Mike, who responded to a complaint of water intrusion on May 11, 2009, (3) alleged misrepresentations of remedy and of the quality of the property made by maintenance staff responding to complaints of visible mold and water intrusion on June 5, 2009, and (4) an alleged misrepresentation of the quality of the proper made by maintenance staff who indicated on June 10, 2009, that visible mold spots were "nothing." (Am. Compl. ¶¶ 116-119; *accord id.* at 126-129). For each of these allegations, the Sanderses provide additional details on the nature of the fraudulent representations.

UDR argues that these claims lack the particularity required of fraud claims, specifically challenging the omission of the names of maintenance staff in paragraphs 116 and 119. The Court finds, however, that the Sanderses have met the *Lasercomb* pleading requirements for actual fraud and have provided information sufficient to put UDR on notice of the claims against it.

In the Amended Complaint, the Sanderses state that they "relied on the statements of remedy by Defendant UDR, and remained in the apartment until Plaintiff Shawnda Sanders's health was harmed and the Plaintiffs' possessions were contaminated by mold." (Am. Compl. ¶¶ 123, 133). UDR argues that the Sanderses have not met the pleading standard as to reliance because they plead facts that undermine these claims. Specifically, the Amended Complaint indicates that the Sanderses purchased a mold test kit, terminated their lease, and moved out of their apartment within days of the alleged misrepresentations. According to UDR, these actions amount to a showing that the Sanderses did not rely on UDR's representations concerning mold in their apartment.

UDR's argument is unpersuasive because reliance as an element of fraud does not exclude the possibility of doubt or require the Plaintiffs to unswervingly follow the Defendant's representations. Rather, reliance must only be reasonable. *FS Photo, Inc. v. PictureVision, Inc.*, 61 F. Supp. 2d 473, 483 (E.D. Va. 1999) (applying Virginia law). The facts as alleged in the Amended Complaint show that the Sanderses reasonably relied on UDR's September 2008, May 2009, and June 2009 representations until July 10, 2009, when they received the results of the mold test kit and immediately vacated their apartment. Taken in the light most favorable to the Plaintiffs as the nonmoving party, the allegations of reliance in the Amended Complaint are sufficiently pled.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES the Motion to Dismiss.

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

/s/
J.         pencer
Chief United States District Judge

ENTERED this 12th day of January 2011.