UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

RAYMOND L. SANDERS and SHAWNDA SANDERS,

Plaintiffs,

v.

UDR, INC., d/b/a DOMINION CREEKWOOD,

Defendant.

Civil Action No. 3:10–CV–459
*Consolidated with Civil Action No. 3:10-CV-623*

**MEMORANDUM OPINION**

THIS MATTER is before the Court on multiple motions filed by the parties in the above-captioned matter.

I. **PLAINTIFFS' MOTIONS**

A. **Motion to Exclude the Testimony of Defense Expert Ed Light, CIH (Doc. No. 60)**

The Plaintiffs argue that the testimony of Ed Light, the Defendant's expert and a certified industrial hygienist, applies an irrelevant standard of care, making it inadmissible under Rules 403 and 702 of the Federal Rules of Evidence. The Court disagrees.

1. **Applicable Law**

Rule 702 of the Federal Rules of Evidence permits expert testimony that "is based upon sufficient facts or data," "is the product of reliable principles or methods," and "applie[s] the principles and methods reliably to the facts of the case."

Rule 403 of the Federal Rules of Evidence allows courts to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

2. **Discussion**

The Plaintiffs' motion challenges whether Light has applied appropriate mold remediation standards. Section 8.01-226.12(A) of the Code of Virginia identifies the following as setting forth Virginia mold remediation standards:

> guidance documents published by the *United States Environmental Protection Agency*, the United States Department of Housing and Urban Development, *the American Conference of Governmental Industrial Hygienists (the Bioaerosols Manual)*, Standard Reference Guides of the Institute of Inspection, Cleaning and Restoration for Water Damage Restoration and Professional Mold Remediation, or any protocol for mold remediation prepared by an industrial hygienist consistent with said guidance documents.

(emphasis added).

In his expert report, Light indicates that he reviewed the "ACGIH Guidelines for Bioaerosols" and the "NYC Department of Health Mold Guidelines" in preparation for this case. (Doc. No. 81, Ex. 1, at 2). Light's response to the Sanderses' claim that UDR's mold remediation efforts did not meet standards indicates that he considered documents produced by the New York City Department of Health and the United States Environment Protection Agency (EPA) as "generally accepted guidelines." *Id.* at 6.

The Code of Virginia specifically identifies one of the documents relied upon by Light—the ACGIH Bioaerosols Manual—as a document setting forth appropriate mold remediation standards. The Plaintiffs argue that Light's *review* of the ACGIH Bioaerosols Manual is insufficient. Instead, they allege, he must explicitly state that he *applied* those

2

guidelines in preparing his expert opinion. They provide no authority for this assertion, and the Court finds it unpersuasive.

Light's expert report indicates that he also considered an EPA document when developing his responses to the Sanderses' claims. *Id.* The Code of Virginia explicitly identifies EPA-developed documents as setting forth appropriate mold remediation standards. Va. Code Ann. § 8.06-226.12(A).

Furthermore, the Code itself allows for additional mold remediation protocols provided they are prepared by an industrial hygienist and consistent with other guidance documents. The Plaintiffs challenge Light's reliance on the New York City Department of Health document by arguing that the Code of Virginia allows an industrial hygienist to develop a mold remediation protocol that is consistent with the listed guidelines but it does not allow the use of other states' and localities' guidelines. This is an unreasonable reading of the Code provision, which states that "'mold remediation in accordance with professional standards' means mold remediation . . . performed consistent with . . . any protocol for mold remediation prepared by an industrial hygienist consistent with said guidance documents." Va. Code Ann. § 8.01-226.12. A fair reading of this provision suggests that a guidance document not specifically named in the Code may nonetheless set forth appropriate mold remediation standards, as long as it is consistent with the listed documents. The Plaintiffs' argument that the Court should exclude Light's testimony because it is not based solely on those documents named in the Code is untenable, particularly given that the Plaintiffs' experts Richard L. Lipsey, Ph.D., and Stanley Yeskolski identified the New York City guidelines as authoritative. (Lipsey Dep., Doc. No. 81, Ex. 2, at 2; Yeskolski Dep., Doc. No. 81, Ex. 3, at 2-4).

3

For these reasons, the Court DENIES the Plaintiffs' motion.

B. **Motions to Exclude Cumulative Medical Expert Testimony of Defense Experts Dr. Emil Bardana and Dr. Ronald Gots for Causation Opinions for Raymond Sanders and Shawnda Sanders** (Doc. Nos. 63, 87)

The Plaintiffs next request that the Court exclude the cumulative testimony of two of the defense experts under Federal Rule of Evidence 403, which allows a court to exclude relevant evidence based on "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." At oral argument on the first of these two motions, the Defendant indicated that Drs. Bardana and Gots would not offer cumulative testimony because Dr. Bardana would offer the differential diagnosis that Raymond Sanders suffers from vocal cord dysfunction while Dr. Gots would not offer that testimony. Thus, there is no cumulative medical expert testimony to exclude.

For this reason, the Court DENIES AS MOOT the Plaintiffs' motion as to the causation opinions for Raymond Sanders (Doc. No. 63). Furthermore, to the extent that Dr. Bardana—not Dr. Gots—will also offer the differential diagnosis for Shawnda Sanders, the Court also DENIES AS MOOT the Plaintiffs' motion as to the causation opinions for Shawnda Sanders (Doc. No. 87).

C. **Motion to Strike Memorandum in Opposition** (Doc. No. 93)

The Plaintiffs move to strike the Defendant's response to the Plaintiffs' motion to strike Dr. Bardana's and Dr. Gots's cumulative testimony for Raymond Sanders. (Doc. No. 93). The Plaintiffs allege that the response was filed beyond the eleven-day period provided for in Local Rule 7(F).

The Plaintiffs have neglected to consider the effect of the Federal Rules of Civil Procedure on the deadlines established by the Local Rules. Since the Plaintiffs completed service via ECF, the Federal Rules extended UDR's deadline for filing its response by three days. Fed. R. Civ. P. 6(d). Under Federal Rule 6(d), the Defendant had fourteen days to file its response to the motion, which established March 2 as the applicable deadline. The Defendant was in compliance with that deadline.

Accordingly, the Court DENIES the Plaintiffs' motion.

## II. DEFENDANT'S MOTIONS

### A. Motion to Exclude Evidence of Damages for Loss of Personal Property (Doc. No. 67)

Defendant UDR asks the Court to exclude the Plaintiffs' evidence of personal property damage due to spoliation. The Court GRANTS that motion.

**1. Background**

On June 4, 2009, the Sanderses notified UDR in writing that there was visible mold and water damage in the apartment. UDR inspected the unit the following day. Another inspection occurred after the Plaintiffs' June 19, 2009, written notice of mold and moisture.

On June 22, 2009, the Plaintiffs received permission to terminate their lease without penalty. On July 2, 2009, they retained counsel, who in turn retained an industrial hygienist who tested the interior of the Plaintiffs' apartment for mold contamination. The Plaintiffs moved out of their apartment on July 10, 2009, and disposed of most of their property because of alleged mold contamination.

Prior to moving out of the apartment and before disposing of their personal belongings, Plaintiff Shawnda Sanders prepared an inventory of personal property that she

and her husband, Plaintiff Raymond Sanders, and their child would dispose of due to alleged mold contamination. That inventory included all the clothing and furniture in the apartment. The Plaintiffs estimated the original value of their contaminated belongings at $34,333.18. In this action, the Plaintiffs seek 50% of the value of their personal property, or $17,166.59.

The Plaintiffs did not provide the Defendant with any photographs of or receipts for property they claim in the inventory, and Defendant UDR did not inspect the property prior to its disposal. UDR alleges that the Sanderses knowingly disposed of evidence critical to one of their claims against UDR and asks the Court to exclude the Plaintiffs' evidence of personal property damage due to spoliation.

2. **Applicable Law**

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Federal law governs the imposition of sanctions due to spoliation of evidence in diversity cases. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449-50 (4th Cir. 2004). Under federal law, a party controlling material evidence must preserve that evidence during litigation and prior to foreseeable litigation. *Silvestri*, 271 F.3d at 591. That obligation includes "giv[ing] the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Id.* A court may find spoliation even in the absence of bad faith, "if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." *Id.* at 593.

6

Courts have discretion in applying sanctions for spoliation, and "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). If a sanction other than dismissal is available and will serve purposes of the doctrine, the court should avoid dismissing a claim. *Id.*

3. **Discussion**

The Plaintiffs' actions present a classic case of spoliation. Once litigation was foreseeable—in this case, at least once the Plaintiffs retained counsel—the Plaintiffs had an obligation to preserve evidence critical to their claims against Defendant UDR. Prior to disposing of that evidence, they had a responsibility to give UDR access to the evidence contaminated by mold or notice that they anticipated disposing of that evidence. The Plaintiffs' failure to do that, or even to photograph the evidence contaminated by mold, greatly prejudices UDR because the company cannot now defend itself against the claim that an unremediated mold contamination caused the Plaintiffs' property loss.

The Plaintiffs argue that their written notices of mold and moisture put UDR on notice of its statutory obligation to inspect and clean the Plaintiffs' personal property. This argument falls short for several reasons. First, the Plaintiffs' written notices of mold and water damage *in the apartment* may satisfy their reporting obligations under the Virginia Residential Landlord Tenant Act, but they do not serve as notice that mold contaminated the Plaintiffs' *personal property* for purposes of overcoming claims of spoliation. Nothing in the Plaintiffs' written notices of mold contamination and water damage indicated that the Plaintiffs' personal belongings were affected.

7

Furthermore, in her deposition Shawnda Sanders alleges that she became aware of the damage to their personal property *after* UDR released the Sanderses from the lease agreement on June 22, which was three days *after* they provided UDR with written notification of mold contamination and water damage. It is beyond reason to conclude that the Plaintiffs put UDR on notice that it should inspect the Plaintiffs' personal property for damage the Plaintiffs themselves were not aware of.

Finally, once the Plaintiffs became aware of the damage to their personal property and made the decision to dispose of it, they could have still preserved the evidence by either notifying UDR in advance of the disposal or by photographing the personal property. They did neither. Interestingly, although the Plaintiffs photographed other parts of the apartment to show evidence of mold before they disposed of their personal property, they did not photograph any of the alleged damage to their personal belongings.

The Plaintiffs' failure to preserve their personal property greatly prejudices UDR's defense because without that evidence, UDR cannot challenge the allegation that unremediated mold contamination caused the Plaintiffs' property loss. Accordingly, the Court determines that the Plaintiffs' disposal of their personal property is spoliation.

For these reasons, the Court GRANTS the Defendant's motion to exclude the evidence of damages for loss of personal property. Such a sanction is reasonable in this case, where the Plaintiffs destroyed of the only evidence of their claims despite having complete control over material evidence, retaining counsel prior to disposing of the evidence, and demonstrating an ability to properly document material evidence for other claims.

## B. Motion to Exclude Pretrial Reports and Testimony of Richard L. Lipsey (Doc. No. 69)

The Defendant moves to exclude the reports and testimony of the Plaintiffs' expert on mold and related damp indoor-space toxicology, Richard L. Lipsey, Ph.D., because they fail to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993). For the reasons below, the Court DENIES the Defendant's motion.

### 1. Background

In support of its motion, UDR argues that Dr. Lipsey's report and testimony ignore the methodology for toxicology experts set forth in *Roche v. Lincoln Properties*:

> First, an evaluation is made of the [molds] to which the individual might have been exposed, and the concentration of these [molds] in air breathed by the individual. The second step involves an evaluation, based on the published scientific literature, of the exposures necessary to produce the adverse effects associated with the [molds] to which the individuals may be exposed. These two evaluations are then combined in the final step of the risk assessment to provide an estimate of the likelihood that any of the [molds] might have been expressed in the exposed individual.

278 F. Supp. 2d 744, 754 (E.D. Va. 2003) (quoting *Cavallo v. Star Enterprise*, 892 F. Supp. 756, 771-72 (E.D. Va. 1995)) (alterations in original). UDR relies on excerpts from Dr. Lipsey's deposition to assert that he has not carried out this method because he cannot say whether the Sanderses were exposed to volatile organic compounds in the apartment; what species of mold was present in the apartment; whether mold in the apartment produced mycotoxins and if so, the kind and amount.; whether mycotoxins existed at a level sufficient to cause any health effects; or what threshold level of mycotoxin exposure is necessary to cause illness. UDR also alleges that rather than employing an established

method to develop his expert report and testimony, Dr. Lipsey used the Plaintiffs' symptoms to conclude that they were exposed to mold and then circularly reasoned that the exposure caused their symptoms.

The Plaintiffs contend that traditional toxicology methodologies are not applicable to all mold exposure cases and that Dr. Lipsey performed a sound and valid forensic assessment. Specifically, the Plaintiffs assert that Dr. Lipsey properly relied on the Plaintiffs' testimony, the photographs of the apartment, and the mold investigator's report to inform his opinion that the apartment was a damp indoor space. The Plaintiffs suggest that Dr. Lipsey next considered the mold investigator's test results and physical evidence to conclude that there were proper conditions for mold growth in the apartment. The Plaintiffs also discuss how Dr. Lipsey's conclusions were consistent with mold exposure literature. Finally, the Plaintiffs argue that Dr. Lipsey considered other plausible alternatives.

2. **Applicable Law**

Federal Rule of Evidence 702 permits a qualified expert to opine on any technical matter that will help the factfinder understand evidence or determine a fact in issue. When a party offers expert testimony, the trial court decides whether the expert's testimony is relevant and reliable. *Daubert*, 509 U.S. at 589 (1993); *also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). *Daubert* does not require an expert's method to demonstrate "an extremely high degree of intellectual purity." *United States v. Baines*, 573 F.3d 979, 989 (10th Cir. 2009). Rather, a court must conclude that the expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

The Supreme Court has announced five factors courts should use in assessing an expert's reliability: (1) whether the underlying technique can or has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards governing the technique's operation; and (5) whether the technique is generally accepted in the relevant expert community. *Daubert*, 509 U.S. at 593-94. A trial court's application of these factors to an expert's testimony should be "flexible," *id.* at 594, and a trial court need not consider each specific factor in assessing an expert's reliability, *Kumho Tire*, 526 U.S. at 141-42. A trial court must limit its consideration "solely [to] principles and methodology" and should not consider "the conclusions they generate." *Daubert*, 509 U.S. at 594-95.

3. **Discussion**

The central issue in the debate over Dr. Lipsey's testimony is whether he has employed an admissible method to form opinions about the Plaintiffs' alleged mold exposure. The Plaintiffs provide no support for their assertion that the specific "forensic assessment" conducted by Dr. Lipsey is an adequate substitute for the toxicology methodology for mold exposure discussed in *Roche*, nor is the "forensic assessment" they describe clear from Dr. Lipsey's expert report or deposition excerpts.

In an abundance of caution, the Court finds that Dr. Lipsey's report and testimony have minimally met the requirements of the Court's gatekeeping function and that because the matter will proceed as a bench trial, the Court will be able to accept what testimony is relevant and worthy and to reject the testimony that falls below that standard.

### III. CONCLUSION

For these reasons and those stated from the bench at the hearing on these matters, the Court:

- DENIES the Plaintiffs' Motion to Exclude the Expert Testimony of Defense Expert Ed Light, CIH (Doc. No. 60);
- DENIES AS MOOT the Plaintiffs' Motion to Exclude Cumulative Medical Expert Testimony of Defense Experts Dr. Emil Bardana and Dr. Ronald Gots for Causation Opinions for Raymond Sanders (Doc. No. 63);
- DENIES AS MOOT the Plaintiffs' Motion to Exclude Cumulative Medical Expert Testimony of Defense Experts Dr. Emil Bardana and Dr. Ronald Gots for Causation Opinions for Shawnda Sanders (Doc. No. 87);
- DENIES the Plaintiffs' Motion to Strike Defendant's Memorandum in Opposition to Plaintiffs' Motion to Exclude Cumulative Medical Expert Testimony of Defense Experts Dr. Emil Bardana and Dr. Ronald Gots for Causation Opinions for Raymond Sanders (Doc. No. 93);
- GRANT the Defendant's Motion to Exclude Evidence of Damages for Loss of Personal Property (Doc. No. 67); and
- DENIES the Defendant's Motion to Exclude Pretrial Reports and Testimony of Richard L. Lipsey (Doc. No. 69).

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this   10th   day of March 2011.